# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JONATHAN SHELTON,

               Plaintiff,

      v.

ABDIRIZAK GURE, et al.,

               Defendants.

CIVIL ACTION NO. 3:19-CV-00843

(MEHALCHICK, M.J.)

## MEMORANDUM

Before the Court are nine motions *in limine* filed by the parties in anticipation of trial. In addition to briefing, the Court held oral argument on the motions on May 10, 2021.

## I. BACKGROUND AND PROCEDURAL HISTORY

As the Court writes primarily for the parties, the background and history are limited to the immediately relevant circumstances of the pending motions. On May 18, 2017, Plaintiff Jonathan Shelton and Defendant Abdirizak Gure were both travelling east on I-80 near the Snow Shoe Rest Area in Centre County, Snow Shoe Township, Pennsylvania. (Doc. 42, at 2). Both drivers were operating tractor-trailers. (Doc. 42, at 2). Gure's trailer was struck from behind by Shelton's tractor-trailer as Shelton moved his vehicle into the right lane behind Gure's. (Doc. 42, at 2). As he was changing lanes, Shelton glanced down and was unable to avoid hitting the corner of Gure's trailer. (Doc. 42, at 2).

Shelton asserts that Gure's vehicle's lights were not on at the time of the collision, while Gure submits that they were on. (Doc. 42, at 2-3). On the day of the accident, Gure performed a pre-trip inspection of the vehicle and determined that the lights on the trailer were operating properly. (Doc. 42, at 3). There is witness testimony that after the accident

occurred Gure's four-way flashers were on and functioning but that the truck was not illuminated at the time of the collision. (Doc. 42, at 3-4). On May 20, 2019, Shelton filed suit against Gure; YaYa Transport, LLC ("YaYa); and Young Stars Transport, Inc. ("Young Stars"), amending his complaint on May 20, 2019, to properly establish subject matter jurisdiction. (Doc. 1; Doc. 5). Plaintiffs R&L Transfer, Inc., and Truck Leasing, LLC voluntarily dismissed their claims against Defendants YaYa and Gure on April 2, 2021, terminating R&L Transfer and Truck Leasing from this case.[1] (Doc. 94). Additionally, on December 2, 2020, Defendants were granted summary judgment as to all claims against YaYa and Young Stars arising from alleged defective lights in the trailer at issue. (Doc. 42; Doc. 43).

As a result, remaining in the case and proceeding to trial are claims by Shelton against Gure for negligence and recklessness (Count I); against YaYa for negligence and recklessness via vicarious liability (Count II); against YaYa for negligent and reckless hiring, supervision, and retention (Count III); against Young Stars for negligence and recklessness via vicarious liability (Count IV); against Young Stars for negligent and reckless hiring, supervision, and retention (Count V); against Young Stars and YaYa for joint venture (Count VI); and against Young Stars and YaYa for negligent entrustment (Count VII). Issues of causation, liability, and damages remain disputed.

---

[1] The Court consolidated R&L Transfer, Inc. and Truck Leasing, LLC's lawsuit against Defendants YaYa and Gure with Shelton's lawsuit against Defendants YaYa, Gure, and Young Stars on April 15, 2020. (Doc. 26).

## II.  STANDARD OF REVIEW

The court is vested with broad inherent authority to manage its cases, which carries with it the discretion to rule on motions *in limine* prior to trial. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (noting that the court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases"). Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing, or irrelevant evidence. *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). In considering motions *in limine*, which call upon the court to engage in preliminary evidentiary rulings under Rule 403 of the Federal Rules of Evidence, the Court begins by recognizing that these "evidentiary rulings [on motions *in limine*] are subject to the trial judge's discretion and are therefore reviewed only for abuse of discretion . . . . Additionally, application of the balancing test under Federal Rule of Evidence 403 will not be disturbed unless it is 'arbitrary and irrational.'" *Ely v. Cabot Oil & Gas Corp.*, No. 3:09-CV-2284, 2016 WL 454817, at *2 (M.D. Pa. Feb. 5, 2016) (citing *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1213 (3d Cir. 1995) (citations omitted)); *see Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 161 (3d Cir. 1994) (reviewing *in limine* rulings for abuse of discretion).

The Federal Rules of Evidence can be characterized as evidentiary rules of inclusion, which are designed to broadly permit fact-finders to consider pertinent factual information while searching for the truth. *Ely v. Cabot Oil & Gas Corp.*, No. 3:09-CV-2284, 2016 WL

454817, at *3 (M.D. Pa. Feb. 5, 2016). The grounds for exclusion of evidence are described as an exception to the general rule favoring admission of relevant evidence, and by permitting the exclusion of relevant evidence only when its probative value is "substantially outweighed" by other prejudicial factors, the Court's discretion in considering evidentiary rulings should consistently be exercised in a fashion which resolves all doubts in favor of the admission of relevant proof in a proceeding. Only where the relevance of that proof is substantially outweighed by some other factors, should admission be denied. *Ely*, 2016 WL 454817, at *3. Evidence is "relevant" if its existence simply has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b).

However, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. The balancing test under Rule 403 provides as follows:

> [t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

> Fed. R. Evid. 403.

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires an expert witness to have "specialized knowledge" regarding the area of testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

**(b)** the testimony is based on sufficient facts or data;

**(c)** the testimony is the product of reliable principles and methods; and

**(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge [, *i.e.,* reliability]; and (3) the expert's testimony must assist the trier of fact [, *i.e.,* fit]." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010) (alterations in original) (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008)).

In general, the Federal Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact. Fed. R. Evid. 402. Moreover, Rule 702 in particular "has a liberal policy of admissibility." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997).

First, an expert is qualified if "the witness possess[es] specialized expertise." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The United States Court of Appeals for the Third Circuit interprets the qualifications requirement liberally, and notes that "a broad range of knowledge, skills, and training qualify an expert as such." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994)*; Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 327-28 (3d Cir. 2002) ("[T]his specialized knowledge can be practical experience as well as academic training and credentials . . . ."). Thus, "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court

considers most appropriate." *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996); *see Pineda*, 520 F.3d at 244 & n.11 (collecting cases that illustrate the permissive nature of qualifications requirement). "However, at a minimum, a proffered expert witness must possess skill or knowledge greater than the average layman." *Betterbox*, 300 F.3d at 328 (quotation omitted).

The second requirement under Rule 702 is that "the process or technique the expert used in formulating the opinion is reliable." *Paoli*, 35 F.3d at 742. Therefore, "the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Paoli*, 35 F.3d at 742 (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993)). The court in *Daubert* noted that the assessment of whether testimony is based on a reliable foundation is "flexible." *Daubert*, 509 U.S. at 594.

The third and last requirement under Rule 702 is "that the expert testimony must fit the issues in the case." *Schneider*, 320 F.3d at 404. This requirement is satisfied where the "expert testimony proffered . . . is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Downing*, 753 F.2d at 1242; "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92. Although the applicable standard for determining "fit" is "not that high," it is nonetheless "higher than bare relevance." *Paoli*, 35 F.3d at 745.

As a final note, in performing its gatekeeping function to determine whether an expert's proffer is reliable and relevant under *Daubert* and Rule 702, the trial court "is not to weigh the evidence relied upon or determine whether it agrees with the conclusions reached therein." *Walker v. Gordon*, 46 F. App'x 691, 695 (3d Cir. 2002) (not precedential) (citing

*Breidor v. Sears, Roebuck & Co.*, 722 F.2d 1134, 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.")).

In keeping with this framework, the Court turns to each of the motions *in limine* filed by the parties.

## III. DISCUSSION

### A. MOTIONS *IN LIMINE* DEEMED UNOPPOSED OR WITHDRAWN

Initially, the Court notes that one of the motions filed by the parties is deemed unopposed based upon the representations made by the parties at oral argument. Defendants filed a motion *in limine* to preclude Plaintiff from offering any evidence, argument, or testimony addressing the lighting on Defendants' tractor at the time of the accident. (Doc. 51). Plaintiff noted on the record that he does not oppose this motion. As such, the Court will **GRANT** Defendants' motion *in limine* seeking to preclude Plaintiff from offering any evidence, argument, or testimony addressing the lighting on Defendants' tractor at the time of the accident.[2] (Doc. 51).

### B. MOTION *IN LIMINE* FOR SPOLIATION, SEEKING AN ADVERSE INFERENCE INSTRUCTION (DOC. 64)

Plaintiff seeks an adverse inference instruction to the jury, as well as reasonable attorneys' fees and costs, for the alleged failure of Defendant YaYa to maintain, preserve and provide certain relevant documentation consistent with the Federal Motor Carrier Safety Regulations (FMCSRs) and the laws and rules of the Commonwealth of Pennsylvania.

---

[2] This does not affect evidence, argument, or testimony addressing the lighting on Defendants' *trailer* at the time of the accident.

Plaintiff asserts that the owner of Young Stars and partial owner of YaYa, Yahya Iman, disposed of documents in July 2019, after this lawsuit was filed. (Doc. 72, at 6). Iman knew that the FMCSRs required documents to be retained for a certain period of time, yet Iman still disposed of them in willful violation of those regulations. (Doc. 72, at 7). Iman disposed of these documents because he did not have any place to store them, according to Plaintiff. (Doc. 72, at 6-8). Furthermore, this disposal allegedly occurred after litigation was commenced and the Request for Production of Documents was served. (Doc. 72, at 8-9).

In opposition to Plaintiff's motion, Defendants dispute that Iman was aware of pending litigation when he destroyed the documents. (Doc. 84, at 5-6). Iman was not certain as to when they were destroyed; it is possible the disposal occurred prior to the lawsuit being filed. (Doc. 84, at 6). Furthermore, Defendants submit that Plaintiff fails to demonstrate that the requested documents existed in Defendant YaYa' control. (Doc. 84, at 6). Many of the documents requested by Plaintiff were found not to exist upon a Department of Transportation review in 2018. (Doc. 84, at 7). Thus, Defendants aver that the documents were never retained in the first place. (Doc. 84, at 6-7). Finally, Defendants assert that none of the evidence for which Plaintiff seeks an adverse inference is relevant. (Doc. 84, at 8). According to Defendants, the primary inquiry is whether Shelton should have been able to avoid the accident. (Doc. 84, at 8). Therefore, the information provided by the documents at issue are not relevant to this matter. (Doc. 84, at 8).

The general principles regarding inferences to be drawn from the loss or destruction of one or more documents are well-established in the Third Circuit. *Burdyn v. Old Forge Borough*, No. 3:12-CV-2236, 2017 WL 382304, at *7 (M.D. Pa. Jan. 26, 2017). "In law, spoliation refers to the hiding or destroying of litigation evidence, generally by an adverse party."

*Williams v. BASF Catalysts LLC,* 765 F.3d 306, 320 (3d Cir. 2014) (internal citations and quotations omitted). Spoliation may give rise to sanctions, including dismissal of the relevant claim or direction that the factfinder presume that the hidden or destroyed evidence was harmful to the offending party's case. *Capogrosso v. 30 River Court East Urban Renewal Co.*, 482 F. App'x 677, 682 (3d Cir. 2012). These sanctions arise from the "common sense observation" that destruction of evidence "is likely done out of fear that the evidence would be harmful to that party." *Kounelis v Sherrer*, 529 F. Supp. 2d 503, 520 (D.N.J. 2008).

Spoliation occurs where (1) the evidence was in the party's control; (2) the evidence is relevant to the claims or defenses in the case; (3) there has been actual suppression or withholding of evidence; and (4) the duty to preserve the evidence was reasonably foreseeable to the party. *Bull v. United Parcel Service, Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). The party asserting that spoliation has occurred has the burden of establishing these elements. *Gentex Corp. v. Sutter*, 827 F. Supp. 2d 384, 390 (M.D. Pa. 2011). Where a court finds spoliation occurred, it must then determine whether sanctions are appropriate by considering "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Gentex Corp.*, 827 F. Supp. 2d at 390–91 (M.D. Pa. 2011) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (1994). An adverse inference may not be issued without evidence that records were intentionally concealed or destroyed. *Harding v. CareerBuilder, LLC*, 168 F. App'x 535, 540 (3d Cir. 2006).

In support of his motion, Plaintiff emphasizes Iman's statement that he threw the FMCSR-required documents away in July 2019, after the instant lawsuit was filed. (Doc. 72,

at 6). A review of Iman's testimony shows that he threw away documents used to oversee driver qualifications which consisted of drug and alcohol testing and test-driving results. (Doc. 72, at 72-77). Iman also testified that he "got rid of" Gure's logbook following the crash because he had no place to store it. (Doc. 72, at 100). Except for these documents, Plaintiff fails to establish the first prong of the spoliation requirements: that the evidence was in the party's control. *See Bull,* 665 F.3d at 73; *Harding,* 168 F. App'x at 540 (holding that mere inability to produce records is not sufficient to give rise to an adverse inference).

Plaintiff submits that Iman disposed of driver applications, motor vehicle reports from hires, road tests, safety performance histories, previous employer checks, annual motor vehicle and driving records, annual lists of violations, and medical exam certificates. (Doc. 72, at 6-7). However, there is no evidence that Iman actually controlled all of these documents. (Doc. 72, at 72-77). Plaintiff writes that "not a single portion of the training program was reduced to a writing[.]" (Doc. 72, at 5). The "safety system," which included the driver file, drug and alcohol testing, vehicle inspections for trucks and trailers, maintenance records, and logbooks, "only lasted until either late 2017 or early 2018 when Mr. Iman became too busy to maintain it." (Doc. 72, at 5, 62-63). During the time period at issue, Iman testified only to keeping records of drug and alcohol testing and test-driving results. (Doc. 72, at 72-77). Therefore, Plaintiff's Motion for Spoliation sanctions shall be **DENIED** as to training documents, driver qualification files, driver histories, and inspection/maintenance records due to Plaintiff's failure to establish that these documents were in the party's control. (Doc. 64; Doc. 72, at 10); *see Bull,* 665 F.3d at 73; *Harding,* 168 F. App'x at 540.

The documents which Iman testified to possessing and disposing of during the time period at issue include records of drug and alcohol testing, test-driving results, and Gure's logbook. (Doc. 72, at 72-77, 100). Of these documents, Plaintiff's motion shall be denied as to drug and alcohol testing records on relevancy grounds. In oral argument, Plaintiff asserted that drug and alcohol testing was relevant to the claim of negligent entrustment. In his negligent entrustment claim, however, Plaintiff asserts that Defendants YaYa and/or Young Stars were negligent in entrusting their vehicle to Gure when they knew or should have known he lacked the necessary skill, judgment, and/or prudence to operate the vehicle; he had a propensity to cause motor vehicle collisions; and he had a propensity to violate the motor vehicle code. (Doc. 5, ¶¶ 87-89). There is no claim or allegation that Defendants should have known that Gure had a propensity to operate a motor vehicle while under the influence, nor that Gure was actually under the influence at the time of the collision. (Doc. 5). Therefore, drug and alcohol testing is irrelevant to the accident at issue and any adverse inference instruction as to drug and alcohol testing records would only confuse the factfinder and unfairly prejudice the Defendants. Plaintiff's Motion for Spoliation shall be **DENIED** as to drug and alcohol testing records. (Doc. 64).

Plaintiff's Motion for Spoliation shall be denied as to test-driving results and Gure's logbook for failure to establish the fourth element of the spoliation requirements. *See Bull,* 665 F.3d at 73; *Bistrian v. Levi*, 448 F. Supp. 3d 454, 468 (E.D. Pa. 2020). The first three spoliation requirements are satisfied as to these pieces of evidence. Iman testified to being in control of a list which consisted of test-driving records in 2019. (Doc. 72, at 73-74). Iman also testified that Gure provided his logbook following the crash but that he got rid of it because he had no place to store it. (Doc. 72, at 100). Therefore, Plaintiff satisfies the requirement that the

evidence was in the party's control. *See Bull,* 665 F.3d at 73. The logbook and test-driving results are clearly relevant to Plaintiff's claims because these documents could show whether Defendants were or were not justified in hiring and entrusting their vehicle to Gure, as well as whether proper driving rules were followed. As such, the requirement that the evidence be relevant to claims or defenses is also satisfied. *See Bull,* 665 F.3d at 73. The third requirement is that there has been actual suppression or withholding of evidence. *Bull,* 665 F.3d at 73. This requirement entails an examination of the circumstances to determine whether the evidence was "lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for," in which case the third requirement is not met. *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995). When a party testifies to throwing documents away, the third requirement is met. *Orion Drilling Company, LLC v. EQT Production Co.*, No. 16-1516, 2018 WL 4344980, at *3 (W.D. Pa. Sep. 11, 2018). Iman testified to intentionally disposing of the test-driving results and the logbook, therefore the third requirement is satisfied. (Doc. 72, at 72-77, 100); *see Orion Drilling Company, LLC*, 2018 WL 4344980, at *3. Finally, the fourth element of a spoliation claim requires Plaintiff to establish that the duty to preserve the evidence for litigation purposes was reasonably foreseeable to Defendants at the time of the disposal. *See Bull,* 665 F.3d at 73; *Bistrian v. Levi*, 448 F. Supp. 3d 454, 468 (E.D. Pa. 2020).

The foreseeability of litigation at the time at which the documents were disposed is heavily contested. Plaintiff asserts that the documents were thrown away after the lawsuit was filed so the requirement is satisfied. Defendants respond that Iman was not notified of the filing of the lawsuit until after he disposed of the documents. Though the duty to preserve generally arises no later then when a lawsuit is filed, courts in the Third Circuit have not

addressed situations where the defendant was not aware of the filing of the lawsuit, as is the case here. *See Bistrian v. Levi*, 448 F. Supp. 3d 454, 468 (E.D. Pa. 2020). The only reported case which the Court could find addressing this issue comes from the Southern District of Mississippi, in which a motorist was killed after her automobile collided with an AMTRAK train. *Wright By and Through Wright v. Illinois Central R. Co.*, 868 F.Supp. 183, 185 (S.D. Miss. 1994). In that case, maintenance reports were destroyed by the defendant ten months after the complaint was filed. *Wright*, 868 F.Supp. at 188. The individual who destroyed the records, however, stated in an affidavit that he was unaware of the lawsuit at the time he destroyed the records and there was no evidence to contradict this. *Wright*, 868 F.Supp. at 188. Explaining that spoliation sanctions arise only when documents have been destroyed in bad faith, the court held that bad faith was not established in this case. *Wright*, 868 F.Supp. at 188.

In the Third Circuit, bad faith is also a requirement for spoliation to occur. *Bull*, 665 F.3d at 79. Iman testified that he threw the test-driving results away in June or July of 2019, after the lawsuit was filed in May 2019, because he had no place to store them. (Doc. 72, at 73-75). Iman stated that he was not sure whether he threw them away after the lawsuit was filed and clarified that the reason that could be possible was because his attorney spent time trying to locate him. (Doc. 72, at 74-75). Gure's logbook was also disposed of by Iman shortly following the crash because "I didn't have a place to store it so I got rid of it." (Doc. 72, at 100). As in *Wright*, there is no evidence to contradict Iman's testimony that he was unaware of litigation when he disposed of the evidence at issue and that he disposed of the documents because he lacked storage capacity. *See Wright*, 868 F.Supp. at 188. Plaintiff has the burden of establishing that Defendants disposed of the evidence in bad faith, with litigation being reasonably foreseeable. *See Bull*, 665 F.3d at 77. There is no evidence that Defendants had

been notified of the litigation at the time of destruction and Plaintiff does not identify evidence to contradict Iman's testimony that he disposed of the documents because he had no place to store them.[3] (Doc. 72, at 72-77, 100).

As such, Plaintiff fails to carry his burden of establishing that the duty to preserve the evidence for litigation purposes was reasonably foreseeable to Defendants at the time of the disposal and that they disposed of the evidence in bad faith. *See Bull*, 665 F.3d at 77. Plaintiff's Motion for Spoliation shall be **DENIED** as to Defendants' records of test-driving results and Gure's logbook. (Doc. 64). This denial is without prejudice to Plaintiff revisiting this motion or seeking further or particular jury instructions on this issue at the time of trial, should the record established at trial dictate such renewal of the motion.

C. MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF FROM INTRODUCING EVIDENCE, ARGUMENT, OR TESTIMONY REGARDING ABDIRIZAK GURE'S GUILTY PLEA TO A SUMMARY CITATION ISSUED FOLLOWING THE ACCIDENT

Defendant seeks to preclude evidence of a citation Defendant Gure was issued in relation to the accident that forms the basis of this case. (Doc. 53). Gure was cited for a violation of 75 Pa. C.S.A. § 4303(b) regarding rear lighting requirements in relation to this accident. (Doc. 55, at 7). "Gure pled guilty because it was easier to simply pay the fine then to travel back to Pennsylvania to fight the ticket," according to Defendants. (Doc. 55, at 7).

---

[3] The accident itself was not sufficient to provide Defendants with notice that litigation was reasonably foreseeable. *See Turturro v. United States,* 43 F. Supp. 3d 434, 460 (E.D. Pa. 2014) (rejecting plaintiff's argument that litigation was reasonably foreseeable the day after a plane crash); *Burke v. TransAm Trucking Inc.*, No. 03:06-CV-2090, 2009 WL 10685128, at *5 (M.D. Pa. 2009) (identifying notice from plaintiffs to defendants to preserve records pertaining to the incident as the point at which litigation was reasonably foreseeable); *Ogin v. Ahmed*, 563 F. Supp. 2d 539, 544 (M.D. Pa. 2008) (noting that defendants had notice of potential litigation on December 6, 2005, which was the date a litigation hold was sent from plaintiff to defendant – two months after the accident occurred).

As an initial matter, this issue is governed by federal procedure rather than Pennsylvania law. *Salas v. Wang*, 846 F.2d 897, 904 (3d Cir. 1988) ("[I]f [evidentiary] rules [between state and federal courts] conflict we must apply the federal rules so long as they are rationally capable of classification as procedural."); *see Rain v. Pavkov*, 357 F.2d 506, 510 (3d Cir. 1966) (holding that district court had erred by applying Pennsylvania law to exclude evidence of a guilty plea to reckless driving charge because it was admissible as an admission against interest and rules of evidence are generally procedural). Under the Federal Rules of Evidence there are two questions: (1) is evidence inadmissible hearsay, and (2) is it inadmissible under the balancing test of Rule 403. *Malantonio*, 2017 WL 633997, at *1.

In determining whether the traffic citation is inadmissible hearsay, the Court must consider the trustworthiness of the citation. *United Ststes v. Versaint*, 849 F.2d 827, 831-32 (3d Cir. 1988); *Prescott v. R&L Transfer, Inc.*, No. 3:11-CV-203, 2015 WL 12564232, at *4 (W.D. Pa. Apr. 21, 2015). In *Prescott*, the Court found the police report mentioning a citation to lack sufficient guarantee of trustworthiness, as plaintiff had not been found guilty and had not paid a fine, and it was unclear whether a citation was even issued or whether the plaintiff had been charged. *Prescott,* 2015 WL 12564232, at *4. However, in the present case, the citation was issued, Gure was charged, and a guilty plea was entered. As such, the Court finds that there is a guarantee of trustworthiness this citation that did not exist in *Prescott*.

Therefore, the Court turns to the question of whether the evidence is inadmissible under Rule 403. The Court finds that the probative value of the citation outweighs any potential unfair prejudice. First, the issuance of the citation has probative value in helping the jury determine the facts of the accident and whether Gure contributed to the accident. *See Grosek v. Panther Transp., Inc.*, No. 3:07-CV-1592, 2009 WL 905035, at *4 (M.D. Pa. 2009)

(finding that the fact that defendant driver pleaded guilty to failing to stop at a red light would be admissible under federal law because the issue was whether the driver ran a red light and injured the plaintiff, so the guilty plea would make a fact of consequence to the litigation more likely). Second, Defendants would not be unfairly prejudiced by admission of this indisputably true citation. "The Third Circuit has specifically held that a plea of guilty to a driving offense is admissible in an action for personal injuries based upon the same facts and circumstances" as the driving offense. *Malantonio*, 2017 WL 633997, at *2 (citing *Rain*, 357 F.2d at 509). As in *Malantonio*, Gure's guilty plea to a traffic citation will not be precluded and Gure may testify to the circumstances surrounding the plea. *See Malantonio*, 2017 WL 633997, at *2.

For the foregoing reasons, the Court will **DENY** Defendants' Motion to Preclude evidence of the citation. (Doc. 53).

D. MOTION *IN LIMINE* TO PRECLUDE EVIDENCE AND TESTIMONY OF SHELTON'S PAST CRIMINAL HISTORY (DOC. 54)[4]

Plaintiff seeks to preclude testimony and evidence of his past criminal history for purposes of impeachment. This history includes two criminal convictions: one for business theft involving less than $2500 and one for criminal mischief. (Doc. 71, at 5). Federal Rule of Evidence 609 governs the use of criminal convictions in order to impeach. Fed. R. Evid. 609. Relevant to the instant case, Rule 609(a)(2) directs that use of the conviction *must* be admitted "if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid.

---

[4] Defendants submit that Shelton's past criminal history should be admissible for purposes of impeachment. (Doc. 82, at 3).

609(a)(2). However, Rule 609(b) says that if more than 10 years have passed since the conviction or release from confinement, whichever is later, evidence of the conviction is admissible only if (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest. Fed. R. Evid. 609(b).

In accordance with the standards set forth under Federal Rule of Evidence 609, the Court will grant the motion *in limine* with respect to Shelton's business theft conviction. (Doc. 54). Shelton's conviction for business theft occurred in the early 2000s, so more than 10 years have passed since the conviction or release from confinement. (Doc. 71, at 5; Doc. 82, at 4). The age of the conviction coupled with its lack of relation to the case at hand means that its probative value does not substantially outweigh its prejudicial effect, thus it is inadmissible under Rule 609(b). Fed. R. Evid. 609(b).

Defendants submit that Shelton's 2019 criminal mischief conviction must be admitted under Rule 609(a)(2). (Doc. 82, at 4). As discussed *supra*, Rule 609(a)(2) requires admission of evidence of a criminal conviction "if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a)(2). Defendants establish that Shelton entered a guilty plea to the charge of criminal mischief by intentionally or recklessly causing another to suffer pecuniary loss by deception or threat. (Doc. 82-1, at 3) (showing a guilty plea to charge of criminal mischief under 18 Pa.C.S. § 3304(a)(3)). Threatening or deceiving another in order to cause pecuniary loss constitutes a dishonest act or false statement. *See e.g. Jackson v. City of Pittsburgh*, No. 07-111, 2010 WL 2511380, at *2 (W.D. Pa. Jun. 17, 2010). Therefore, the

Court must allow evidence of Shelton's 2019 criminal mischief conviction. *See* Fed. R. Evid. 609(a)(2).

In accordance with the standards set forth under Federal Rule of Evidence 609, the Court will **GRANT** the motion *in limine* with respect to Shelton's business theft conviction and **DENY** the motion *in limine* with respect to Shelton's criminal mischief conviction. (Doc. 54); *see* Fed. R. Evid. 609. Defendants will be permitted to use this conviction for purposes of impeachment. *See* (Doc. 82, at 3).

E. MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OF NEGLIGENT ENTRUSTMENT (DOC. 58)

Defendants seek to preclude Plaintiff from presenting any evidence or testimony of negligent entrustment against Defendants. (Doc. 58). Defendants assert that Defendant YaYa did not own or control the tractor or trailer involved in the accident, rather Gure owned the tractor and Young Stars owned the trailer. (Doc. 59, at 5). Therefore, YaYa cannot have negligently entrusted a vehicle to Gure. (Doc. 59, at 5). Furthermore, Plaintiff has not produced evidence showing that Young Stars or YaYa were on notice of Gure's propensity "to use the vehicle in such manner as to create an unreasonable risk of harm to others," so as to subject them to liability for negligent entrustment. (Doc. 59, at 4-5) (quoting *City of Phila. v. Beretta U.S.A. Corp.*, 277 F.3d 415, 422 n.9 (3d Cir. 2002)). Plaintiff responds that YaYa and Young Stars can be held liable for negligent entrustment arising from leasing the equipment to Gure and employing Gure to move materials. (Doc. 81, at 29-30). Furthermore, evidence of Defendants' "willful ignorance" of FMCR requirements that Gure be properly trained and/or qualified gives rise to its negligent entrustment claim. (Doc. 81, at 30-33).

Under Pennsylvania law,

> It is negligent to permit a third person to use a thing or engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

*Christiansen v. Silfies*, 667 A.2d 396, 400 (Pa. Super. 1995) (quoting Restatement (Second) of Torts § 308).

It is clear from the law that Defendants need not have owned the tractor or trailer to be held liable for negligent entrustment, as Defendants assert.[5] (Doc. 59, at 5). In *Christiansen*, the court held that a non-owner lessee of a tractor-trailer and employer of the driver, along with the owner of the tractor-trailer, could be held liable for negligent entrustment.[6] *Christiansen*, 667 A.2d at 398, 400. Here, Gure was employed by YaYa, who leased the trailer from Young Stars, the owner. (Doc. 35, ¶ 2; Doc. 40-1, ¶ 2). These relationships to Gure are sufficient to give rise to claims of negligent entrustment, thus Defendants' claim that only owners are subject to such liability fails. (Doc. 59, at 4-5).

Defendants' assertion that Plaintiff has failed to produce evidence that Young Stars or YaYa were on notice of Gure's potential to create an unreasonable risk of harm to others through use of the vehicle also fails. (Doc. 59, at 5). A party's lack of thorough vetting prior to entrusting its vehicle to a third party, as well as lack of monitoring usage of that vehicle, may give rise to a claim of negligent entrustment. *Spencer v. Johnson*, --- A.3d ----, at *16 (Pa. Super. Mar. 18, 2021). Plaintiff has produced evidence through Iman's testimony that Defendants failed to conduct a proper background check or monitor Gure's usage of the

---

[5] In the case cited by Defendants, the text says "actor" where Defendants say "owner." (Doc. 59, at 4-5); *City of Phila. v. Beretta U.S.A. Corp.*, 277 F.3d 415, 422 n.9 (3d Cir. 2002).

[6] The Court notes that the driver of the tractor-trailer must have been found causally negligent before the owner and lessor/employer could be found liable for negligent entrustment. *Christiansen*, 667 A.2d at 400.

vehicle. (Doc. 81, at 320-360). As such, Plaintiff has produced evidence sufficient to give rise to his claim of negligent entrustment. *See Spencer*, --- A.3d ----, at 16. Defendants' Motion *In Limine* to preclude Plaintiff from introducing evidence, argument, or testimony of alleged negligent entrustment shall be **DENIED**. (Doc. 58).

F. MOTION *IN LIMINE* TO PRECLUDE TESTIMONY AND REPORT OF KEN LACEY AND TO PRECLUDE EVIDENCE, ARGUMENT, OR TESTIMONY REGARDING YAYA'S VIOLATIONS OF THE FEDERAL MOTOR CARRIER SAFETY REGULATIONS, YAYA'S UNSATISFACOTRY RATING BY THE DOT, AND YAYA BEING PUT OUT OF SERVICE ON APRIL 15, 2018 (DOC. 60)

Defendants seek to preclude testimony and the report of Ken Lacey on grounds that (1) Lacey does not possess skill or knowledge greater than the average layman; (2) Lacey's statements about violations of the FMCSRs are not relevant to the accident and are highly prejudicial; (3) FMCSR violations discussed by Lacey involve other drivers; (4) Lacey's opinions are based on guess and conjecture and will not aid the trier of fact; and (5) Lacey's statements are conclusory and inflammatory. (Doc. 61). Plaintiff submits that Lacey is a trucking industry expert whose "well-reasoned opinions are based on his extensive experience in the trucking industry and will aid the trier of fact[.]" (Doc. 81, at 33).

As an initial matter, Lacey has previously been recognized in the Middle District of Pennsylvania as an expert witness. *Hood v. Sellers*, No. 3:17-CV-00275, 2018 WL 3429708 (M.D. Pa. Jul. 16, 2018). In *Hood*, Lacey testified to the applicable standard of care, and how that standard is informed by federal regulations, in a trucking accident. *Hood*, 2018 WL 3429708, at *1. Lacey is employed by KJL Safety and Claims Services, LLC as a safety, claims, and transportation operations consultant to the transportation industry. (Doc. 81, at 419). In this position, Lacey works with transportation companies to improve safety performance. (Doc. 81, at 419-20). Lacey writes that KJL "offers post-crash review for

prevention, litigation, and other uses" which "requires an assessment of the overall safety situation involved in the incident, both to evaluate what safe or unsafe practices had an impact (sic) so that changes may be made to existing safety and compliance program(s) to prevent similar occurrences in the future." (Doc. 81, at 420). Defendants' motion will not be granted on grounds that "Lacey does not possess skill or knowledge greater than the average layman." (Doc. 61, at 6).

Lacey's opinions regarding Defendants' compliance with the FMCSRs are based on more than guess and conjecture. Lacey opines that YaYa "recklessly and dangerously permitted Gure, an individual not qualified, trained, retrained or monitored as required by the Pennsylvania Commercial Drivers Manual, and [FMCSRs], to operate its CMV." (Doc. 81, at 425). Lacey bases this testimony on "the non-existence of any documents produced by Defendants as required by FMCSR 391 which would be found in the driver's qualification and/or personnel files required by FMCSR Part 391." (Doc. 81, at 426). These missing documents include a Motor Vehicle Record, an annual review, a list of violations, an employment application, drug and alcohol testing results, and employment history. (Doc. 81, at 426-27). Qualifying, training, retraining, and monitoring a driver are affirmative acts where the absence of documentation can show lack of action. Thus, Lacey's opinion on this issue is based on more than guess and conjecture. (Doc. 61, at 8).

Other opinions for which Lacey provides sufficient support include that YaYa was not knowledgeable about the FMCSRs and did not train its drivers in FMCSRs, and that YaYa failed to comply with FMCSR requirements for inspection, repair, and maintenance. (Doc. 81, at 427-28). Lacey supports these conclusions with Iman's deposition testimony to the effect that he became too busy to comply with FMCSR requirements, along with the lack of

documents which are required to show compliance. (Doc. 81, at 427-28). Lacey provides support for his conclusion that Iman willfully lacked compliance with FMCSRs with Iman's testimony that he knew it would be reckless for a motor carrier to disregard or ignore the FMCSRs but that he ignored them anyway. (Doc. 81, at 428). Finally, Lacey supports his position that YaYa failed to have inspections performed or to maintain its CMVs as required by the FMCSRs by citing FMCSA audit results. (Doc. 81, at 430).[7]

"Situations in which the failure to qualify the opinion have resulted in exclusion are typically those in which the expert testimony is speculative, using such language as 'possibility.'" *Schulz v. Celotex Corp.*, 942 F.2d 204, 208 (3d Cir. 1991). Here, there are three speculative conclusions made by Lacey which will be precluded. First, Lacey states that YaYa "was in no way complying with the FMCSRs," and that YaYa "recklessly and dangerously made a conscious decision to deliberately disregard the FMCSRs and was shut down as a result." (Doc. 81, at 425, 428). Though Lacey provides support for non-compliance with certain FMCSRs, a blanket statement that YaYa "in no way" complied with the FMCSRs and that YaYa disregarded *the entirety* of the FMCSRs is speculative and unsupported. Second, Lacey states that "Gure was not a qualified driver under the FMCSR Part 391 at the time of said collision with the Shelton vehicle." (Doc. 81, at 426). Lacey is permitted to conclude that YaYa failed to qualify Gure as required by FMCSR 391, however it would be speculative and would invite unfair prejudice for Lacey to state that Gure was generally not a qualified driver under FMCSR 391. (Doc. 81, at 426). Finally, Lacey opines that "[i]t's likely YaYa never had [certain] documents" required by the FMCSRs, as well as that a

---

[7] Since no claim can arise from alleged defective lights on the trailer, inspection and maintenance of the vehicle are irrelevant. *See* (Doc. 42; Doc. 43).

mechanical issue could have been the cause of the trailer's lack of illumination. (Doc. 81, at 428, 430). Lacey provides no basis for his conclusion that YaYa likely never had the required documents, therefore this opinion is purely speculative and will be precluded. Furthermore, it is also speculative to opine that because YaYa failed to have inspections done, mechanical issues may have caused the crash. (Doc. 81, at 430). There is no evidence of any mechanical defects, so such speculation will not be permitted. Lacey also grounds this opinion in terms of a "definite possibility," a level of confidence which indicates speculation. *See Schulz*, 942 F.2d at 208.

Finally, only FMCSR violations which involve Gure or relate to the accident shall be admitted. *See Achey v. Crete Carrier Corp.*, No. 07-CV-3592, 2009 WL 9083282, at *7 (requiring evidence of a relationship between FMCSR violations and the accident at issue before allowing punitive damages to arise from the violations). Any FMCSR violations which are not connected to this accident cannot give rise to damages, so are not relevant to this matter. *See Achey*, 2009 WL 9083282, at *7. Of the violations found during the February 8, 2018 compliance review, the only violations which *shall* be admitted are (1) "failure to require a driver to provide a list of traffic violations every 12 months," as pertaining to Gure; (2) "using a driver who had not completed and furnished an employment application," as pertaining to Gure; and (3) failing to maintain record of annual review.[8] (Doc. 81, at 424). The DOT's rating of "unsatisfactory" which was issued subsequent to the accident, as well as the fact that YaYa was subsequently put out of service are also precluded from admittance due to irrelevance. *See Knecht v. Balanescu*, No. 4:16-CV-00549, 2017 WL 4883198, at *8 (M.D. Pa.

---

[8] The Court notes that all claims against Defendants YaYa and Young Stars arising from alleged defective lights in the trailer at issue have been dismissed. (Doc. 42; Doc. 43).

Oct. 30, 2017) (explaining that evidence of statutory and regulatory violations which have no bearing on the causation of an accident should generally be withheld).[9] Any discussion of Gure's conduct after the accident shall be precluded as irrelevant. Discussion of four-way flashers after the accident, however, will be allowed as the absence of flashers immediately following the accident make it more or less likely that flashers were on at the time of the accident. (Doc. 61, at 9).

Defendants' Motion shall be **GRANTED** to the extent that any discussion or opinion regarding inspection or maintenance of vehicles shall be precluded; any statement to the effect that Defendants failed to comply with or disregarded the entirety of the FMCSRs shall be precluded; the opinion that Gure was not a qualified driver under the FMCSRs shall be precluded;[10] any opinion that Defendants never possessed certain documents shall be precluded; any discussion of February 18, 2018 FMCSR violations besides those specifically identified in the immediately preceding paragraph shall be precluded; any discussion of the DOT's "unsatisfactory" rating and YaYa being put out of service shall be precluded; and any discussion of Gure's conduct immediately following the accident shall be precluded.[11] The Motion shall be **DENIED** in all other respects. (Doc. 60)

---

[9] As discussed *supra*, there is no allegation that either driver was under the influence at the time of the accident, thus any mention of drug and alcohol testing shall be precluded.

[10] Lacey may introduce evidence and opine that Defendants failed to properly qualify Gure pursuant to the FMCSRs.

[11] This does not include the presence of four-way flashers immediately following the accident.

G. Motion *in Limine* to Preclude Evidence of "Preventable" Determination and Shelton's Termination of Employment (Doc. 63)

Plaintiff asserts that Shelton's termination should be precluded as a remedial measure pursuant to Rule 407 so is inadmissible. (Doc. 70, at 4). Furthermore, Shelton's post-accident employment status is irrelevant to the driver's conduct on the day in question and does not make it more or less likely that Defendants were negligent, according to Plaintiff. (Doc. 70, at 4-5). Plaintiff submits that the decision to terminate him was not based upon evidence from this case and that it would be unfairly prejudicial because he was terminated for violating internal company policy rather than Federal regulations or Pennsylvania law. (Doc. 70, at 5).

Defendants respond that Shelton's termination was not a remedial measure because there is no indication that any policies were changed. (Doc. 83, at 7). Defendants further assert that Shelton's termination poses little prejudice, so the probative value of this evidence is not substantially outweighed by any unfair prejudice. (Doc. 83, at 6). Finally, Defendants contend that Shelton's termination can at least be used for purposes of determining his wage loss claim. (Doc. 83, at 6).

A "driver's employment status post-accident does not make it more likely or less likely that he was negligent on the day in question. Additionally, it does not make it more or less likely that the trucking company negligently entrusted the truck to him on the day in question." *Zawicki v. Armstrong*, No. 3:16-CV-453, 2017 WL 6206290, at *6 (M.D. Pa. Dec. 8, 2017). This holding precluded evidence that a truck driver was suspended for three days following the accident at issue. *Zawicki*, 2017 WL 6206290, at *6. Following this guidance, Plaintiff's Motion *In Limine* to preclude evidence of Shelton's termination will be **GRANTED**. (Doc. 63). Shelton's employment status may still be used for damages purposes.

Plaintiff submits that evidence of R&L Trucking's internal safety investigation which determined that the accident was "preventable" should be precluded. (Doc. 70, at 6). The standard for determining preventability under R&L guidelines and determining negligence under Pennsylvania law are not the same, according to Plaintiff. (Doc. 70, at 6). Therefore, it would mislead the jury if this evidence were introduced because it would incorrectly signal that a finding that Shelton was comparatively negligent has already been made. (Doc. 70, at 7). Plaintiff asserts that the preventability standard is not meant to determine "fault," rather only whether "the driver failed to do everything that reasonably could have been done to avoid the accident." (Doc. 70, at 7).

Defendants contend that evidence of R&L's internal investigation that determined Shelton violated its cell phone policy is of high probative value. (Doc. 83, at 5). It would be unfair to exclude evidence of the internal investigation and admission that its driver could have prevented the accident. (Doc. 83, at 5).

R&L's internal investigation findings are inadmissible pursuant to Federal Rule of Evidence 403. Relevant evidence may be excluded under Rule 403 if its "probative value is substantially outweighed by the danger of unfair prejudice," or "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, Notes of the Advisory Committee of the Proposed Rules. In *Villalba v. Consol. Freightways Corp. of Delaware*, No. 98 C 5347, 2000 WL 1154073, at *6 (N.D. Ill. Aug. 14, 2000), a trucking company's internal accident review was precluded because "the standard for determining preventability and the standard for determining negligence under Illinois law are not necessarily the same." *Villalba*, 2000 WL 1154073, at *6. The court held that the differing standards could confuse and mislead the jury, thus the evidence was precluded.

*Villabla*, 2000 WL 1154073, at *6. Contrary to Defendants' assertion, this persuasive reasoning remains the same no matter which party attempts to use the evidence and no matter who bears the burden of proof. *See* (Doc. 83, at 4-5). Thus, Plaintiff's Motion *In Limine* shall be **GRANTED** as to R&L's preventability determination. (Doc. 63).

H. Motion *in Limine* to Preclude Plaintiff From Presenting Evidence, Argument, or Testimony of Trooper Nicklas's Observations as to the Gure Vehicle After the Accident (Doc. 65)

Defendants submit that Trooper Nicklas did not witness the accident so any observations he made are irrelevant as to the happening of the accident. (Doc. 66, at 5). Trooper Nicklas's testimony would also be highly prejudicial, so should be precluded under Rule 403, according to Defendants. (Doc. 66, at 5). Plaintiff responds that Trooper Nicklas's testimony is relevant to the investigation of the accident, and there is no reason it would be unfairly prejudicial. (Doc. 81, at 15).

In *Pardue v. Elkadi*, No. 3:07-CV-355, 2008 WL 42556, at *1-2 (M.D. Pa. Feb. 14, 2008), the defendant argued that the testimony of a police officer who investigated a car accident and prepared a report should be precluded. *Pardue*, 2008 WL 42556, at *1. The court noted that the officer "investigated the scene of the accident shortly after it occurred," and inspected the physical evidence. *Pardue*, 2008 WL 42556, at *1. The officer's testimony was allowed. *Pardue*, 2008 WL 42556, at *2. As in *Pardue*, Nicklas investigated the scene of the accident shortly after it occurred. (Doc. 81, at 232-262); *see Pardue*, 2008 WL 42556, at *1. Such testimony is admissible, thus Defendants' Motion *In Limine* to Preclude Trooper Nicklas's Observations shall be **DENIED**. (Doc. 65).

I. <span style="font-variant:small-caps">Motion *in Limine* to Preclude Plaintiff From Presenting Evidence, Argument, or Testimony of Negligent Hiring, Supervision, and/or Retention Against Defendants YaYa Transport LLC and/or Young Stars (</span>Doc. 67)

Defendants assert that because Gure was acting as an independent contractor at the time of the accident, liability for negligent hiring, supervision, or retention should be precluded. (Doc. 68, at 5-7). Even if Gure were deemed an employee, Plaintiff has not produced evidence to suggest he had a history of accidents or that his Commercial Driver's License had been revoked or suspended. (Doc. 68, at 7). Furthermore, Defendant Young Stars had no contractual relationship with Gure because Young Stars only owned the trailer and leased it to YaYa. (Doc. 68, at 8). Plaintiff responds that Gure was a statutory employee of both YaYa and Young Stars under the FMCSRs at all times relevant to the crash. (Doc. 81, at 18). Additionally, the records contain ample evidence of negligent or reckless hiring, supervision, or retention, according to Plaintiff. (Doc. 81, at 24-28).

Trucking companies have "an obligation to hire drivers who operate their vehicles in a safe manner." *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 44 (Pa. Super. 2000). Under the FMCSRs, drivers of a commercial motor vehicle, *including independent contractors while in the course of operating the motor vehicle*, are defined as employees of an employer. 49 C.F.R. § 390.5 (emphasis added). An employer is "any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it[.]" 49 C.F.R. § 390.5. These definitions supersede the traditional common law distinctions between employees and independent contractors. *Ooida Risk Retention Group, Inc. v. Williams*, 579 F.3d 469, 475 n.2 (5th Cir. 2009) (citing *Consumers County Mut. Ins. Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362, 366 (5th Cir. 2002)).

- 28 -

The FMCSRs leave no doubt that Gure, the driver of a commercial motor vehicle, was an employee of both YaYa and Young Stars, who assigned Gure to operate the vehicle and who owned the vehicle. As such, Gure is considered an employee under 49 C.F.R. § 390.5. Additionally, the record contains evidence that the driver training program provided to Gure, as well as the hiring process, were inadequate. (Doc. 81, at 76-77).

For the foregoing reasons, Defendants' Motion *In Limine* to preclude evidence, argument, or testimony of negligent hiring, supervision, or retention shall be **DENIED**. (Doc. 67).

IV. **CONCLUSION**

For the foregoing reasons, the parties' motions *in limine* are granted or denied as follows:

1. Defendants' Motion to Preclude Plaintiff from offering any evidence, argument, or testimony addressing the lighting on Defendants' tractor at the time of the accident is **GRANTED** (Doc. 51);

2. Plaintiff's Motion for Spoliation is **DENIED** (Doc. 64);

3. Defendants' Motion to Preclude evidence of Gure's traffic citation is **DENIED** (Doc. 53);

4. Plaintiff's Motion to Preclude evidence of his past convictions is **GRANTED** as to Shelton's business theft conviction and **DENIED** as to Shelton's criminal mischief conviction (Doc. 54);

5. Defendants' Motion to Preclude Plaintiff from introducing evidence, argument, or testimony of alleged negligent entrustment is **DENIED** (Doc. 58);

6. Defendants' Motion to preclude the expert report and evidence of FMCSR violations, the DOT rating, and the fact that YaYa was put out of service is **GRANTED** to the extent that any discussion or opinion regarding inspection or maintenance of vehicles is be precluded; any statement to the effect that Defendants failed to comply with or disregarded the entirety of the FMCSRs is precluded; the opinion that Gure was not a qualified driver under the FMCSRs is precluded; any opinion that Defendants never possessed certain documents is precluded; any discussion of February 18, 2018 FMCSR violations besides those

specifically identified in the discussion of this motion is precluded; any discussion of the DOT's "unsatisfactory" rating and YaYa being put out of service is precluded; and any discussion of Gure's conduct immediately following the accident is precluded. The Motion is **DENIED** in all other respects (Doc. 60);

7. Plaintiff's Motion to Preclude evidence of Shelton's termination and of R&L's preventability determination is **GRANTED** (Doc. 63);

8. Defendants' Motion to Preclude Trooper Nicklas's observations is **DENIED** (Doc. 65); and

9. Defendants' Motion to Preclude evidence, argument, or testimony of negligent hiring, supervision, or retention is **DENIED** (Doc. 67).

An appropriate Order follows.

Dated: June 1, 2021

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**